395 So.2d 193 (1981)
Richard Duane MONDY, Appellant,
v.
Carol A. MONDY, Appellee.
No. TT-29.
District Court of Appeal of Florida, First District.
February 13, 1981.
Rehearing Denied March 31, 1981.
*194 Elliott Zisser of Zisser, Robison & Spohrer, P.A., Jacksonville, for appellant.
John R. Forbes of Forbes & Meide, Jacksonville, for appellee.
LILES, WOODIE A., Associate Judge (Retired).
The Father appeals from a trial court order awarding the Mother temporary custody of the minor children. We affirm.
The Mondys were married and resided in the State of Alabama. Two minor children were born as a result of marriage, ages three and one-half and five. While the family lived in Alabama, the Father took the children without the consent of the Mother and went west, evidently shopping for a state with short residency requirements. *195 He finally landed in Bonneville County, Idaho, where the residency requirement is six weeks. The Mother went to Jacksonville, Florida, where her father and relatives reside. Eleven months after Father departed Alabama and six weeks after settling in Idaho, he filed suit for dissolution of marriage and requested that the Idaho court award him custody of the children. The Mother was properly served, and she proceeded to Idaho and contested custody. A few days prior to the entry of the Idaho court's decree awarding temporary custody to the Father, she absconded with the children and came back to Jacksonville.
On August 16, 1979, after learning that the children were in Jacksonville, Florida, the Father filed a petition for writ of habeas corpus in the Duval County Circuit Court. A writ was issued the same day.
Eight days later, the Mother petitioned for dissolution of the marriage and an injunction to enjoin the Duval County Sheriff's Department from taking the children pursuant to the writ of habeas corpus. The trial court enjoined enforcement of the writ and awarded the Mother temporary custody of the children until the court could make inquiry into the situation and determine the appropriate forum for the action. On August 28, 1979, the Father filed a motion seeking recognition of his Idaho decree awarding custody of the children to him. The Mother then filed another petition requesting the establishment of the Idaho decree as the Florida decree and seeking to modify it to award her custody and child support. On September 10, 1979, the trial court granted the Mother's petition to establish the Idaho decree as the Florida decree and ordered the clerk to request that all documents in the Idaho court's file and all other pertinent data be forwarded to the Duval County Circuit Court. He ordered a home study from the Florida Department of Health & Rehabilitative Services and its sister agency in Idaho, granted temporary custody to the Mother, and enjoined both parties from removing the children from Duval County. The Father later filed a motion to vacate and set aside this order and a motion to dismiss the Mother's second petition on grounds of lack of subject-matter jurisdiction under the Uniform Child Custody Jurisdiction Act.
By order dated November 16, 1979, the trial court denied both of the Father's motions. This appeal followed.
The Father has argued very forcefully that the Uniform Child Custody Jurisdiction Act (Section 61.1302 et seq., Florida Statutes) is controlling and deprives the Florida court of jurisdiction over this cause. However, neither party comes before this Court with clean hands, and somewhere someone has to make an attempt to stop the child-napping and determine what is in the best interests of the children.
Section 61.1308(1)(b), Florida Statutes, provides that a court of this state has jurisdiction to make a child custody determination if it is in the best interest of the child that the court assume jurisdiction because: (1) the child and his parents, or the child and at least one contestant, have a significant connection with this state; and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. The statutory provision "does not require that the child's only `significant connection' be with the State of Florida in order for jurisdiction of the Florida court to attach. It only requires that the child have a `significant connection' with this state." Hofer v. Agner, 373 So.2d 48, 51 (Fla. 1st DCA 1979). In the instant case, the trial court made the following uncontested finding:
The wife immediately removed herself and the minor children to Jacksonville, Florida, where the family had previously lived and where her father resides and where she owns real property and where the children have friends and spent part of their earlier lives and immediately petitioned this court for a dissolution of marriage.
A similar finding was held to establish an appropriate jurisdictional nexus in Hofer, and in that case there were even more compelling reasons for regarding the other *196 state as the appropriate forum for litigating the issue of child custody. We also note the trial court's finding that:
It appears now that the children are in a safe and healthy environment, living in a modest home in Jacksonville, Florida, in a neighborhood that the children are familiar with and are enrolled in appropriate schools and are attending church and other desirable functions on a regular basis.
It thus appears that there is, or soon will be, substantial evidence concerning the children's present and future care, protection, training, and personal relationships in Jacksonville. Accordingly, we think there is a sufficient predicate for the trial court's assumption of jurisdiction under Section 61.1308(1)(b)(1) and (2), Florida Statutes.
Section 61.1308(1)(c)(2), Florida Statutes, also provides that a Florida court may exercise jurisdiction when a child is physically present in this state and it is necessary in an emergency to protect the child because he or she has been subjected to or threatened with mistreatment or abuse or otherwise neglected. In this case, the Mother has alleged that the "children had been abused and they had regressed in their speech patterns and were in an extreme state of emotional distress." Regardless of the truth of this particular allegation, the trial court may, at least temporarily, assume jurisdiction to insure that the children are not threatened with mistreatment, abuse, or neglect. See also Jackson v. Jackson, 390 So.2d 787 (Fla. 1st DCA 1980); Trujillo v. Trujillo, 378 So.2d 812 (Fla. 3rd DCA 1980). Further, the trial court has taken the appropriate steps to investigate the allegations of the Mother concerning the abuse of the children and their welfare in general by ordering HRS and its Idaho counterpart to conduct home studies. A reversal at this time would only short circuit this process.
Appellant urges that a reversal is mandated by Section 61.1318(2), Florida Statutes:

Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. [Emphasis supplied]
We think that the introductory phrase provides the trial court with a certain discretionary leeway. By ordering HRS and its Idaho counterpart to conduct home studies, the Florida trial court has appropriately initiated a determination of where the children's best interest lie. It should not be forgotten that the primary purpose of the statute is to promote the welfare of the children. Since the trial court is more intimately acquainted with the situation, we defer to its judgment and will not disturb its ruling.
Accordingly, the judgment is
AFFIRMED.
WENTWORTH, J., concurs.
JOANOS, J., dissents with written opinion.
JOANOS, Judge, dissenting.
I disagree with the majority's opinion.
While I agree with the majority that neither party has clean hands, the Florida Court should defer to the Idaho Court which first properly assumed jurisdiction under the Uniform Child Custody Act.
The Act requires that our courts recognize and defer to the jurisdiction of a sister state which has properly assumed jurisdiction under laws in accordance with the provisions of the Uniform Act. See: Florida Statutes §§ 61.1304, 61.1314, 61.1328. Idaho has adopted the Uniform Act. Idaho Code, Section 5-1001, et seq. In accepting jurisdiction, the Idaho judge followed the provisions of the Act. At the time that he accepted jurisdiction, no other state provided a superior forum under the Act. The Mother had moved from Alabama, the state in which the parties lived together when *197 the Father left with the children. The Idaho Court's jurisdiction over the matter is superior to the Florida Court. Further, there is nothing in this record to suggest that the Idaho Court was attempting to do anything but act in accordance with the best interests of the children.