465 So.2d 607 (1985)
Augusto SUAREZ ORTEGA, Appellant,
v.
Margaret Rose PUJALS de SUAREZ, Appellee.
Nos. 83-2765, 84-165.
District Court of Appeal of Florida, Third District.
March 19, 1985.
*608 Hall and O'Brien and Andrew Hall, Miami, for appellant.
Yvette G. Murphy, Coral Gables, for appellee.
Before BARKDULL, HUBBART and FERGUSON, JJ.
FERGUSON, Judge.
These appeals involve the validity of certain orders entered in a child custody dispute.
The parties were married in Virginia in 1971. Shortly thereafter they moved to Mexico which had been the husband's place of residence prior to the marriage. At all times prior to commencement of the proceedings out of which this appeal arises (except for several months in 1977-78 when *609 they returned to the United States so that the child could be born with dual citizenship), the parties resided in Mexico.
Appellee/wife initiated support proceedings in Mexico in September, 1981, after the parties began to experience marital difficulties, but withdrew the petition in December, 1981. On June 6, 1982, she brought the child to Florida. Sixteen days later she filed a petition for child custody, also seeking a restraining order against appellant/husband. After an ex parte hearing on the same day, the court granted the relief sought. A copy of the order was allegedly mailed to the husband but he claims to have never received it.
In November, 1982, the husband was granted provisional custody of the child by a Mexican court. On December 7, 1982, he filed in the Florida action a petition for habeas corpus contending that the Florida court had no jurisdiction to adjudicate the wife's claim for custody because Mexico was the child's home state. He later filed a motion to dismiss wife's petition for dissolution, alleging as one ground that the court was without subject matter jurisdiction. These appeals are brought from orders which deny his habeas corpus petition and motion to dismiss.
The appellant/husband contends that the "home state" of the child was Mexico and therefore under the Uniform Child Custody Jurisdiction Act [the UCCJA], the Florida court should have deferred to the Mexican provisional order of custody. He also argues that no personal jurisdiction was ever obtained over him in Florida and therefore the trial court was without the authority to award temporary support.
The appellee/wife responds to the first issue alleging that the husband abandoned her and the child in Mexico, that the domicile of the child under Mexican law was the same as hers, and that as an abandoned spouse under Mexican law she was free to depart Mexico. As to the second issue she responds that the husband, by filing his petition for habeas corpus, sought affirmative relief in the court of Florida and thereby submitted himself to this state's jurisdiction for all purposes. The wife further urges that the award of temporary custody should be sustained because the power to decline to exercise jurisdiction in cases of child-snatching or other wrongdoing, see § 61.1318(1), Fla. Stat. (1983), is discretionary.
The UCCJA applies to this cause pursuant to section 61.1348, Florida Statutes (1983), which extends the general policies of the act to decrees of other nations "if reasonable notice and opportunity to be heard were given to all affected persons." Although the Mexican provisional custody decree was obtained by the husband after an ex parte hearing, this procedure is the same as that followed in Florida. There has been no showing that the Mexican court will not accord minimum due process when ruling on the issue of permanent child custody.
Under the UCCJA, Florida clearly has no jurisdiction to determine child custody. Wife's argument that the trial court has jurisdiction because the parent and child have "a significant connection with this state," § 61.1308(1)(b)1., Fla. Stat. (1983), fails because it is totally unsupported by the evidence. There is no question but that Mexico, and not Florida, is the child's home. See Brown v. Tan, 395 So.2d 1249, 1252 (Fla. 3d DCA 1981). Neither has it been shown that Mexico would not exercise jurisdiction in accordance with principles embodied in the UCCJA. See §§ 61.1302-61.1348, Fla. Stat. (1983). The authority of the trial court in this case rested solely on the fact that the wife, obviously seeking a friendlier forum, brought the child to this state. We have previously found a lack of jurisdiction in similar factual circumstances. See Al-Fassi v. Al-Fassi, 433 So.2d 664 (Fla. 3d DCA 1983), rev. denied, 446 So.2d 99 (Fla. 1984).
As an alternative defense of the Florida court's exercise of subject matter jurisdiction, the wife claims that her husband abandoned the Mexico marital domicile. The trial court made no finding of abandonment, moreover, the facts show no *610 more than a physical separation. During the period of separation, and continuing up to the date when the wife left Mexico, the parties were engaged in child custody feuds. Nonetheless, the husband continued to contribute to the support of the wife and child. Under Florida law there is not the slightest proof of an abandonment, which is evidenced by desertion or the withholding of support. See generally State v. Darnell, 230 So.2d 151, 152 (Fla. 1970); § 856.04, Fla. Stat. (1983).
The wife argues further that the husband submitted himself and the subject matter of the action to the jurisdiction of the Florida court when he filed a petition for habeas corpus to have the child returned to Mexico. The argument is without merit. As a general rule, a habeas corpus proceeding is an independent civil action designed to secure a prompt determination as to the legality of a restraint in some form. Crane v. Hayes, 253 So.2d 435, 439 (Fla. 1971). If the court was without jurisdiction to determine custody of the minor child under chapter 61, Florida Statutes (1983), a habeas corpus petition challenging the exercise of jurisdiction to determine custody could not confer jurisdiction. See Brown v. Tan, 395 So.2d 1249, 1252 (Fla. 3d DCA 1981).
Wife's last argument is that the Mexican provisional custody decree obtained by the husband is invalid because the husband falsely represented to the Mexican court that the wife and child were in that country at the time he sought the decree. Although Florida courts may refuse to enforce a decree which has been procured by fraud, see Lanigan v. Lanigan, 78 So.2d 92, 94 (Fla. 1955), the alleged fraudulent misrepresentations made upon the Mexican court could not confer jurisdiction on the Florida court to grant affirmative relief. See Bonis v. Bonis, 420 So.2d 104 (Fla. 3d DCA 1982), rev. denied, 430 So.2d 450 (Fla. 1983) (an alleged child-snatching in foreign state, without more, is not an independent basis for Florida court's exercise of jurisdiction). The challenge to the provisional custody decree based on fraud is properly directed to the Mexican court.
The two orders are reversed and the cause is remanded with instructions to grant appellant/husband habeas corpus relief, and dismiss the appellee/wife's petition for the reason that the Florida court is without subject matter jurisdiction.
BARKDULL, Judge, dissenting.
I respectfully dissent. These appeals involved the validity of certain orders entered in a child custody dispute.
The parties to this cause were married in the State of Virginia in 1971. They moved to Mexico in September, 1972, where the husband's family resided. In 1977 the parties returned to the United States so that their child could be born in the United States. A son was born on August 23, 1977, in the State of Maryland. The parties and their newborn resided in Arlington, Virginia until early 1978 when they returned to Mexico. While in Mexico they resided in an apartment in Mexico City. Because of marital difficulties the parties separated in the spring of 1981. At this time the husband took the child from his mother and she did not know his whereabouts for some two weeks. Except for this period the child, since birth, has always been in the physical custody of the mother.
From the time the husband left the marital home in the spring of 1981 until June of 1982 the wife continued to reside in the apartment in Mexico City with the child. In late May or early June of 1982 the wife learned that the husband, after requesting her to pack all the child's belongings for a temporary visit with him, was going to cease paying the rent for the apartment, was going to cut off her funds and take her automobile. As a result of these threats, on June 6, 1982, she left Mexico with the child and came to Florida where her parents and other relatives resided. On June 22, 1982, she filed in the Circuit Court of the Eleventh Judicial Circuit a sworn petition for temporary custody and *611 restraining order.[1] On that date the trial judge entered an order confirming custody of the child in her and enjoined the husband from removing the child from the jurisdiction. After the husband learned of the wife's proceeding he commenced an action in the courts of Mexico and was granted provisional custody of the child on November 16, 1982. On December 7, 1982, the husband filed a petition for writ of habeas corpus in the cause in the trial court. Thereafter in February, 1983, the habeas corpus petition came on for hearing before the same trial judge that had earlier confirmed custody in the wife and he continued the hearing pending further evidence. Next the wife, in the spring of 1983, filed in the original temporary custody proceeding, (which now included the habeas corpus petition) a petition for dissolution of marriage. A copy of this new petition was served on the husband by service of publication. His Florida counsel were served with copies of the petition and the proof of publication. To this petition the husband filed a motion to dismiss, grounded upon the lack of jurisdiction over the subject matter and lack of jurisdiction over the person. The trial court received evidence from the parties in August, 1983, and on October 21, 1983, and entered an order denying the petition for habeas corpus and the husband's motion to dismiss the dissolution proceeding. A notice of appeal from this non-final order was duly filed and docketed in this court under clerk's file number 83-2754. On October 30, 1983, the wife filed a petition for temporary alimony and support. On January 2, 1984, the trial court entered an order awarding temporary child support but denying, without prejudice, the alimony request. A notice of appeal from this non-final order was duly filed and docketed in this court under clerk's file number 84-165. Thereafter the causes were then consolidated for all appellate purposes. Following briefing and oral argument, both parties having urged the application of Mexican law,[2] they were requested to file supplemental briefs directed to the following issue.
"Whether the husband could validly receive `provisional custody' by the Mexican Court when the mother and the child were domiciled in the United States."
To this request both parties have responded with supplemental briefs.
The appellant/husband contends, among other things, that the "home state" of the child was Mexico and therefore under the Uniform Child Custody Jurisdiction Act, hereinafter referred to as the UCCJA, the Florida Court should have deferred to the Mexican provisional order of custody and that no personal jurisdiction was ever obtained over him and therefore the trial court was without the authority to award temporary support.
The wife responds to the first issue by stating that the husband abandoned her and the child in Mexico, that the domicile of the child, under Mexican law remained with her, and that as an abandoned spouse under Mexican law, she was free to depart Mexico. As to the second issue, she contends that the husband by filing his petition for habeas corpus, sought affirmative relief in the courts of Florida and thereby submitted himself to the Florida jurisdiction for all purposes. The wife further urges that the award of temporary custody should be sustained under the discretionary power of the trial court pursuant to Section 61.1318(1), Florida Statutes (1983).
Both parties have assumed that the UCCJA is applicable in its entirety to this case, however, an examination of this uniform law reveals that Section 61.1304(1), Florida Statutes (1983) states that its purposes are to:
"(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody ...

*612 (2) Promote cooperation with the courts of other states ...
(7) Facilitate the enforcement of custody decrees of the other states.
(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.
(9) Make uniform the law with respect to the subject of this act among states enacting it."
Section 61.1306(10), Florida Statutes (1983) defines "state" as follows:
"(10) `State' means any state, territory, or possession of the United States; the Commonwealth of Puerto Rico; or the District of Columbia."
The appellant contends that the following cases require the application of Section 61.1308, Florida Statutes (1983) through Section 61.1346 Florida Statutes (1983) of the UCCJA in the instant case. Nelson v. Nelson, 433 So.2d 1015 (Fla. 3d DCA 1983); Wilkerson v. Wilkerson, 404 So.2d 120 (Fla. 4th DCA 1981); Jackson v. Jackson, 390 So.2d 787 (Fla. 1st DCA 1980); Costantino v. Costantino, 386 So.2d 1274 (Fla. 3d DCA 1980); Trujillo v. Trujillo, 378 So.2d 812 (Fla. 3d DCA 1980); Moser v. Davis, 364 So.2d 521 (Fla. 2d DCA 1978). An examination of these authorities discloses that they all involve conflicts between one or more of the fifty United States and therefore the above referred to sections of the UCCJA would be applicable. The facts in the instant case, clearly are distinguishable in that the sovereign country of Mexico would not come under the definition in Section 61.1306(10), Florida Statutes (1983), however, we also note Section 61.1348, Florida Statutes (1983) which reads as follows:
"International application. The general policies of this act extend to the international area. The provisions of this act relating to the recognition and enforcement of custody decrees of other states apply to custody decrees, and decrees involving legal institutions similar in nature to custody institutions, rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons."
In an effort to harmonize these sections it would appear that the specific provisions of Section 61.1308, Florida Statutes (1982) through 61.1346, Florida Statutes (1983) are applicable to those jurisdictions defined in Section 61.1306(10) and that in constructing orders as to custody by any other foreign jurisdiction these will only be honored if they are compatible with our traditional concepts of "due process". Mexico not being within the definition of "state" the trial court was not inhibited in ordering custody in the first instance by any definition of "home state" contained in Section 61.1305(5) Florida Statutes (1983). Neither party has demonstrated, even if appropriate under the pleading, that Mexican law is "substantially similar" to our law in this regard. See Fernandez v. Rodriguez, 97 Misc.2d 353, 411 N.Y.S.2d 134 (S.Ct. 1978). Therefore I find that the trial court was correct in awarding custody, first because the UCCJA as to "home state" was not applicable under the facts, and second because no abuse of discretion has been shown in the temporary award of custody under the circumstances. Hickey v. Baxter, 461 So.2d 1364 (Fla. 1st DCA 1984).
Even if the UCCJA was applicable, the trial court was correct in his award of temporary custody. The wife was entitled to remove herself and the child from Mexico as the abandoned spouse. The mother and the child having been abandoned she was being supported in Florida by her parents and the state. The trial court was not in error in its temporary custody order. See Section 61.1308(1)(b) Florida Statutes (1983).
Examining the provisional order of the Mexican Court, it is clear that this order was falsely procured, in that in the petition to secure the order, the husband alleged falsely that the wife and child were in Mexico City and she was intending to leave the country with the child. It is clear from the record that the husband knew before *613 he filed the petition the whereabouts of the wife and the child, that they were in Florida and not in Mexico. Therefore the provisional order of custody was procured fraudulently and was not entitled to be enforced by the courts of this state. Parker v. Parker, (1945) 155 Fla. 635, 21 So.2d 141, cert den. 326 U.S. 718, 66 S.Ct. 23, 90 L.Ed. 425 (1945).
Turning next to the order of temporary support, the husband waived any jurisdiction defects by seeking affirmative relief in the trial court proceeding by his petition for habeas corpus, which act submitted him to the jurisdiction of the trial court. McKelvey v. McKelvey, 323 So.2d 651 (Fla. 3d DCA 1976). Service of an amended pleading, even if seeking new relief on opposing counsel of record, is sufficient service in Florida in a pending action, McKelvey v. McKelvey, supra; Florida Rules Civil Procedure 1.080(a), (b), therefore service of the petition for dissolution filed in the same proceeding in which he had already appeared was personal service and the trial court did not err in awarding temporary child support. No error is urged as to the amount.
Therefore for the reasons above stated I would affirm the two orders under review.
NOTES
[1] It is noted on the face of the order that a copy was furnished to Augusto Suarez Ortega. This was apparently done by mail in care of his last known address, his parent's home in Mexico City, Mexico.
[2] This was done notwithstanding the fact that neither party has complied with Section 90.203, Florida Statutes (1983) to activate judicial notice of foreign law.